

Fee Paid

1  H. Mark Madnick, Esq., SBN 228126
   *HMMadnick@KramarMadnick.com*
2  Jonathan M. Starre, Esq., SBN 261312
   *JMStarre@KramarMadnick.com*
3  Armound Ghoorchian, Esq., SBN 332645
   *AGhoorchian@KramarMadnick.com*
4  **KRAMAR MADNICK, LLP**
   16133 Ventura Boulevard, Suite 805
5  Encino, California  91436-2405
   Telephone:  818-380-3500
6  Facsimile:   818-380-3505

7  Attorneys for Plaintiffs

8

9

**F I L E D**
CLERK, U.S. DISTRICT COURT

6/18/25

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ cs _____ DEPUTY

10          **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA**

12

13  CREATION CAPITAL GROUP, LLC,        Case No.: CV25-5542-JAK(PVCx)
    a Delaware Limited Liability Company,
14  CYS MANAGEMENT, LLC, a              **COMPLAINT FOR:**
    Delaware Limited Liability Company,
15  TARANJEET CHOPRA, LLC, a
    California Limited Liability Company,    **(1)   PROMISSORY FRAUD**
16                                           **(2)   FRAUD AND DECEIT**
               Plaintiffs,                   **(3)   AIDING AND ABETTING**
17                                           **        FRAUD**
               v.                            **(4)   CONVERSION**
18                                           **(5)   VIOLATION OF**
    MICHAEL CHIYA ARYEH, an                  **        FEDERAL RICO**
19  individual; STONE STREET                 **(6)   NEGLIGENT**
    CAPITAL, LLC, a Delaware Limited         **        MISREPRESENTATION**
20  Liability Company; CLEAR FUNDING         **(7)   NEGLIGENCE**
    GROUP, LLC, a Delaware Limited           **(8)   BREACH OF FIDUCIARY**
21  Liability Company; KIAN MIRIN, an        **        DUTY**
    individual;  and DOES 1 to 200,          **(9)   AIDING AND ABETTING**
22  inclusive,                               **        BREACH OF FIDUCIARY**
                                             **        DUTY**
23             Defendants.                   **(10)  BREACH OF CONTRACT**
24                                           **(11)  VIOLATION OF**
                                             **        COMPUTER FRAUD AND**
25                                           **        ABUSE ACT**
                                             **(12)  VIOLATION OF CAL.**
26                                           **        P.C. § 502**
27                                           **(13)  VIOLATION OF CAL.**
                                             **        P.C. § 496**
28

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

**(14)  VIOLATION OF CAL.
B.P.C. §§ 17200**
**(15)  CIVIL CONSPIRACY**
**(16)  INTENTIONAL
INTERFERENCE WITH
ECONOMIC
RELATIONSHIP**
**(17)  NEGLIGENT
INTERFERENCE WITH
ECONOMIC
RELATIONSHIPS**
**(18)  CONSTRUCTIVE TRUST**
**(19)  MONEY HAD AND
RECEIVED**

COMES NOW Plaintiffs Creation Capital Group, LLC, CYS Management, LLC, and Taranjeet Chopra, LLC, and complain and allege as follows:

### INTRODUCTION

1.     This action involves claims against the Defendants by their former business partners, co-members, and/or investors. Misconduct by Defendant Michael Chiya Aryeh ("Aryeh") lies at the heart of this case. Aryeh lured investors and partners to his merchant cash advance scheme with falsified documents and misrepresentations. Once he hooked them, Aryeh began stealing revenue from the new venture. For his theft, fraud, conversion, embezzlement, unauthorized access and use of computer systems and information, and other misconduct, Defendants herein are civilly liable to Plaintiffs Creation Capital Group, LLC, and CYS Management, LLC.

### THE PARTIES

2.     Plaintiff Creation Capital Group, LLC ("Creation"), is, and at all times herein mentioned was, a Delaware Limited Liability Company with its principal place of business in the County of Los Angeles, State of California.

3.     Plaintiff CYS Management, LLC ("Plaintiff" or "CYS"), is, and at all times herein mentioned was, a Delaware Limited Liability Company with its principal place of business in the County of Los Angeles, State of California.

KRAMER MADNICK, LLP
ATTORNEYS AT LAW

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

4.    Plaintiff Taranjeet Chopra, LLC ("Chopra"), is and at all times herein mentioned was, a California Limited Liability Company with its principal place of business in the County of Los Angeles, State of California.

5.    Plaintiffs CYS and Chopra are, and at all times herein mentioned were, the only members of Creation.

6.    Defendant Aryeh is, and at all times herein mentioned was, an individual residing in New York City, State of New York.

7.    Defendant Stone Street Capital, LLC ("Stone Street") is, and at all times herein mentioned was, a Delaware Limited Liability Company qualified to do business and doing business in the County of Los Angeles, State of California. Stone Street's principal place of business is located in Wilmington, Delaware.

8.    Defendant Clear Funding Group, LLC ("Defendant Clear Funding") is, and at all times herein mentioned was, a Delaware Limited Liability Company qualified to do business and doing business in the County of Los Angeles, State of California. Clear Funding's principal place of business is located in New York, in the State of New York. (Defendants Stone Street and Clear Funding are collectively referred to as the "MCA Entities.")

9.    Defendant Kian Mirin ("Mirin") is, and at all times herein mentioned was, an individual residing in the County of Los Angeles, California.

10.    That the true names or capacities, whether individual, corporate, associate or otherwise of Defendants Does 1 through 190, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names, and will ask leave of court to amend this Complaint to show their true names and capacities when the same have been ascertained.  Plaintiffs are informed and believe and thereon alleges that each of the Defendants herein named as a Doe was negligently, wantonly and carelessly responsible in some manner for the events and happenings herein referred to, and caused injury and damages proximately thereby to the Plaintiffs as herein alleged.

11.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, the Defendants and each of them, were the agents, servants and employees of the remaining Defendants, and were at all times herein acting within the purpose and scope of said agency, service and employment.

12.     Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to do the acts which are herein alleged and did the acts and things herein alleged pursuant to, and in furtherance of, this conspiracy and agreement. Moreover, Defendants, and each of them, by lending aid and encouragement to each other, and by ratifying and adopting each other's acts, furthered the conspiracy.  Defendants, and each of their, acts in furtherance of this conspiracy and agreement have caused and continue to cause Plaintiffs' damage.

13.     Plaintiffs are informed and believe and thereon allege that at all relevant times mentioned herein, each of the defendants was the agent, servant, representative, officer, director, independent contractor, partner, joint venturer, alter ego, affiliate, parent, subsidiary and/or employee of each or some of the other Defendants, and in doing the acts complained of herein, was acting within the course and scope of his or its authority as agent, servant, representative, officer, director, independent contractor, partner, joint venturer, alter ego, affiliate, parent, subsidiary and/or employee and with the expressed and/or implied approval, permission, knowledge, consent and ratification of all the other defendants.

## **VENUE AND JURISDICTION**

14.     This action is properly brought in this court because all the acts, omissions and breaches alleged in the Complaint were committed within this state and within Los Angeles County. In addition, the parties have entered into a written agreement that states:

15.     Jurisdiction is based on diversity of citizenship. (28 U.S.C. § 1332.)

16.    Jurisdiction is also based on Federal Question Jurisdiction (28 U.S.C. § 1337.)

17.    Venue is proper in this court pursuant to the written agreement, and because a substantial part of the acts, events, and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

18.    A merchant cash advance ("MCA") company purchases a portion of a merchant's future receivables.  MCA companies range from small entities capitalized by one or more private investors to large corporations funded by pools of investors. Merchants often work with brokers to find an MCA company and facilitate the transaction.

19.    An MCA company's due diligence process is usually completed within 1 to 3 business days. Once the parties agree on terms, the merchant enters into an agreement, receives funds, and the purchaser receives a portion of the merchant's receivables on a daily, weekly, or monthly basis.

20.    In February of 2023, Aryeh, approached Michael Yedidsion ("Yedidsion"), a real estate investor based in Los Angeles, with a proposition to form a new MCA company. Aryeh represented he had been working in the MCA industry for the previous 8 years in the capacity of legal counsel, manager of operations, investor, and as a "Servicer." A Servicer, as explained by Aryeh, plays the crucial role of managing all collection activities for the MCA company.

21.    As further inducement to encourage Yedidsion to help raise funds, Aryeh represented he was a member of an existing MCA company named Alliance Capital US, LLC ("Alliance US").  Through several emails and texts, Aryeh further represented that between 2020 and 2022 Alliance US had placed millions of dollars in MCA funds with an average default rate of only 4-5%.  This meant that only 4-5% of Alliance US's deals were uncollectable and needed further legal action to recover the purchased receivables. Aryeh also represented that investors in an MCA managed

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

by Aryeh should expect returns of 50% to 80% per annum on their investments. The fundraising success for the new company hinged on Aryeh sharing favorable financial data from Alliance US.

22.    On April 4, 2023, Aryeh emailed copies of form 1065 tax returns for Alliance US to Yedidsion and other investors. The returns showed "Gross Receipts" of $3,424,890 dollars in 2020, $7,520,212 in 2021, and $17,698,356 in 2022. More importantly, Aryeh emailed Profit & Loss statements showing Alliance US's Net Operating Income at $2.7 million in 2020, $6.2M in 2021, and $14.9M in 2022. Lastly, Aryeh represented that his "AVG. Default rate" was 2.7%.

23.    Unbeknownst to Plaintiffs, Aryeh's representations regarding his ownership in Alliance US were false. This information came to light much too late when Dan Semple ("Semple"), Alliance US's true manager, alerted Yedidsion in December of 2024, nearly a year after Creation had been formed and $1,000,000.00 had been invested by Aryeh's victims. Semple and Aryeh had worked together in the past, but the relationship had already dissolved due to misconduct and misrepresentations by Aryeh. Semple stated that Aryeh was never a member of Alliance US. Semple also verified that the form 1065 tax returns submitted by Aryeh to Plaintiffs were also fabricated.

24.    Between April 2023 and March 2024, Yedidsion, relying on the representations set forth above, introduced Aryeh to two investment funds and several individual investors, including Mr. Taranjeet Chopra ("Chopra"), a Los Angeles based merchandise distributor.

25.    After further negotiations between Yedidsion, Chopra, and Aryeh, the parties agreed to start a new MCA company. The parties agreed to use Creation Capital Group, LLC, ("Creation"), a Delaware Limited Liability Company Aryeh had formed on December 11, 2023.

26.    On April 16, 2024, the parties entered into the Limited Liability Operating Agreement of Creation Capital Group, LLC, (the "Agreement"), naming

Creation's Members as Taranjeet Chopra LLC ("Chopra") and CYS Management LLC ("CYS"). Michael Yedidsion signed the Agreement on behalf of CYS as its Manager. Taranjeet Chopra signed on behalf of Chopra as its Manager. A true and correct copy of the Operating Agreement is attached hereto as Exhibit 1.

27.     The Agreement also named CYS as Creation's Manager. CYS's Members are Aryeh, Yedidsion and Yoav Sarraf ("Sarraf"). A total of $1M was raised through debt with a promissory note issued to Chopra LLC. The Agreement is attached hereto as Exhibit A.

28.     The Operating Agreement stipulated several material covenants to be followed by Aryeh, who was wholly in charge of Creation's operations.

29.     First, Aryeh agreed to use his existing network of brokers to find leads.

30.     Second, Aryeh agreed to manage Creation's operations and act as Servicer based on the MCA Services Agreement signed by Aryeh.

31.     Third, Aryeh agreed he would not be paid any management, maintenance, or service fees until Creation's debt of $1M plus interest at 15% per annum was paid to Chopra LLC. Any remaining profits would be split between Creation's members, with Aryeh receiving a large percentage for his efforts through his ownership interest in CYS.

32.     Fourth, Aryeh agreed that written approval was needed from another member of Creation for any expenses over $5,000. This restriction was put into place to prevent large sums of money from moving out of Creation's bank accounts without multiple members' oversight.

33.     Lastly, Aryeh agreed he would not operate or compete with Creation.

34.     Plaintiffs would not have invested in Creation but for Aryeh's false representations. Plaintiffs believe that Aryeh's true purpose for entering into agreements with Plaintiffs was to gain control of Creation's finances in order to embezzle funds and defrauding Creation's members.

35.     In April of 2024, Aryeh created new bank accounts for Creation at Optimum Bank, of Fort Lauderdale, Florida.  Immediately thereafter, Aryeh began a pattern of deception, miscommunication, and bullying to deflect from his breaches of the Operating Agreement.

36.     Between April and August 2024, Aryeh formed and began operating two new MCA companies named Stone Street Capital, LLC and Clear Funding Group, LLC, in direct competition with Creation. Aryeh did not inform or seek approval from other members of Creation or CYS, and therefore this violated the Creation operating agreement.

37.     Plaintiffs allege and believe that Aryeh then used his knowledge of banking operations at Optimum Bank to begin ordering wires in excess of $5,000, without needing secondary approval from another Creation member as required by the Operating Agreement. Optimum Bank's policy for ACH transactions required secondary approval, but Aryeh circumvented this by ordering wires, which could be ordered by email from only one authorized member. Creation's bank statements show Aryeh processed dozens of wires between May 2024 and December 2024 without secondary approval in direct breach of his duties.

38.     Plaintiffs allege and believe that Aryeh further carried out his plan to continue to embezzle and defraud Creation by "stacking" or performing multiple refinances of the same merchant, even though the merchant was not able to pay back the original advance. This process allowed Aryeh to hide the fact that Creation's default rate was skyrocketing to over 50% instead of the 4-5% represented by Aryeh.

39.     By November 2024, Aryeh represented that Creation had more than $1.7 million dollars in receivables, when in reality Creation's default rate was over 50% and most of the accounts could not be collected.

40.     Around this time, Aryeh had been making transfers over $5,000.00 to himself without any other members' approval.

41.    Aryeh's failure to alert other Creation and CYS members of the mounting defaults allowed him to continue operations and continue paying his own unapproved fees before Aryeh's planned insolvency of Creation.

42.    Upon further review of Creation's bank statements and collections history in November 2024, Yedidsion discovered Aryeh's scheme. That is when Yedidsion asked Aryeh about the unapproved money transfers and the excessive defaults rates. Upon Aryeh's failure to respond, Yedidsion sent several texts and noticed Aryeh in an email dated December 17, 2024, regarding Aryeh's breaches.

43.    Having been discovered, Aryeh immediately ceased communications and asked not to be disturbed because of an ongoing illness despite continuing to communicate with other parties at that time and despite subsequently sending threatening messages to Yedidsion and Sarraf.

44.    Shortly thereafter, as the administrator of Creation's email account, Aryeh changed passwords for Yedidsion and Sarraf so neither could access Creation's communications with merchants and verify Aryeh's breaches.

45.    Aryeh also locked Yedidsion and Sarraf out of Creation's DocuSign account to stop them from gaining access to copies of agreements Aryeh had signed with merchants. Without access to Creation emails and signed agreements, no one else could contact the merchants to collect on Creation's behalf.

46.    Aryeh then began a bullying campaign against Sarraf and Yedidsion by sending multiple texts threatening lawsuits for exposing him. In one instance, Aryeh, a licensed attorney, defamed Sarraf and wished death on his family including his pregnant wife. In another instance, Aryeh threatened Yedidsion by texting that Aryeh is "coming for . . . blood and no one will stop me."

47.    In late December 2024, Sarraf, the original administrator of Creation's email account, reached out to Google to regain access to Creation's emails. Through a rigorous process of validating ownership, Google determined Sarraf to be the rightful administrator. Aryeh's challenges to keep Sarraf and Yedidsion from gaining

access were denied. The process was also successfully repeated with Creation's DocuSign account.

48.     Upon gaining access to Creation's emails and agreements, including Aryeh's, Plaintiffs discovered Aryeh had sent and received dozens of emails daily to merchants and brokers for new and existing deals at the same time he stopped communicating with Yedidsion and Sarraf.

49.     It was further discovered that Aryeh had planned and was carrying out a campaign to collect and convert as much of Creation's receivable as possible by using his company, Stone Street, which he owned and wholly controlled.

50.     On January 2, 2025, the members of Creation held a meeting to terminate Aryeh's authority to have access to Creation's bank accounts and remove Aryeh from servicing any of Creation's existing accounts.

51.     Plaintiffs allege and believe that beginning December 2024, Aryeh contacted Creation's merchants to inform them Stone Street and Creation were one and the same, and payments due to Creation will now be made to Stone Street. Emails show Aryeh also offered these merchants discounts for early payoffs if made to Stone Street directly.

52.     Plaintiffs also allege and believe that Aryeh was aided by Kian Mirin ("Mirin"), a contractor paid by Creation throughout 2024, to carry out his plan.  Mirin was hired by Creation in May 2024 and trained by Aryeh personally. Mirin processed due diligence documents on all Creation merchants and communicated with Aryeh daily.

53.     On or about January 2, 2025, Sarraf, contacted Mirin to ask for help in accessing the Creation emails and merchant agreements. Unbeknownst to Sarraf, Mirin was also working for Stone Street and was aiding Aryeh carry out his plan to embezzle funds.

54.     After his initial conversation with Sarraf, Mirin cut all communications with Creation's members. Knowing his work for Stone Street directly interfered with

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

Creation's ability to collect Creation's receivables, Mirin continued to help Aryeh identify new merchants which Aryeh could fund using the money embezzled from Creation. Plaintiffs allege and believe that if not for Mirin's work for Aryeh and Stone Street, Aryeh would have to find and train other staff to perform Mirin's role and could not have focused on directing Creation's funds into Stone Street.

55.    Plaintiffs allege and believe that Aryeh also instructed Creation's merchants to not speak with anyone else regarding monies due to Creation. As the person who closed each Creation deal personally, Aryeh understood and relied on the merchants trusting him and not questioning the change in the "pay to" entity. These actions are also evidenced by Aryeh's emails and corroborated with communications with multiple merchants who believed their payments to Stone Street were satisfying their debts to Creation.

56.    Having successfully stopped Creation from collecting its receivables, Aryeh used his Stone Street bank account at Optimum Bank to collect as much of the amounts due to Creation as possible. By March 2025, having been left with no income stream, Creation was unable to meet its debt service obligations or pay operating expenses.

57.    Plaintiffs allege and believe that Stone Street and Aryeh collected and continue to collect several hundred thousand dollars in payments belonging to Creation since November 2024. Aryeh also embezzled tens of thousands of dollars in unearned fees from Creation's bank accounts.  In addition to diverted funds from Creation's clients, Creation has been left with over $700,000 in debt owed to its investor, Taranjeet Chopra, LLC.

## FIRST CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; and Does 1-10, inclusive.**

**(Fraudulent Misrepresentation)**

58.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 53, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

59.    Defendant Aryeh provided Plaintiffs falsified information, including but not limited to:

      a.  Fabricated tax returns for Alliance US (email 4/4/23)

      b.  Fabricated default members for proformas

      c.  Misrepresented being member of Alliance US

      d.  Misrepresented the average default rate being 2.7%

60.    In reliance of these misrepresentations, on April 16, 2024, the Plaintiffs entered into the Agreement.

61.    At the time these misrepresentations were made Aryeh: (1) intended to induce Plaintiffs to execute the Agreement; and (2) did not intend to perform on his promises contained in the terms of the Agreement. He never intended to perform the agreement as he lied about being a member of Alliance US and falsified tax returns.

62.    Plaintiffs' reliance was reasonable because Aryeh held himself out to be an attorney, barred in the State of New York. Plaintiffs' reliance was also reasonable because Aryeh also held himself out to be an individual with years of experience in the MCA industry.

63.    Plaintiffs learned of Aryeh's misrepresentation in December 2024, when Semple, Alliance US's true manager, alerted Plaintiffs that while Aryeh and Semple had worked together in the past, their relationship had dissolved due to Aryeh's misconduct and misrepresentation. Semple also alerted Plaintiffs that Aryeh was never a member of Alliance US. Additionally, Semple verified that the Form 1065 Tax returns Aryeh submitted to Plaintiffs were fabricated and falsified documents. No such tax returns existed.

64.    Plaintiffs would not have entered into the Agreement if they would have known of Aryeh's true intentions to deceive them at the time these promises were made by Aryeh. Plaintiffs attest they would not have invested in Creation but for

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

Aryeh's representations. Plaintiffs believe that Aryeh's true purpose for entering into agreements with Plaintiffs was to gain control of Creation's finances in order to embezzle funds and ultimately leave Creation's debt to its members.

65.     Defendants Aryeh, Stone Street, and Clear Funding also siphoned over $400,000 from Creation merchants. Defendants Aryeh, Stone Street, and Clear Funding told Creation's merchants that funds redirected to Stone Street were paying off their balance with Creation. Further, Defendants Aryeh, Stone Street, and Clear Funding also sent Creation merchants emails offering them a discount if they paid the remaining balance due to Creation directly to Stone Street. This was untrue.

66.     As a direct and proximate result of Defendants, and each of them, Plaintiffs have been harmed and sustained damaged in an amount to be determined at the time of trial, not less than $1,000,000.00.

## SECOND CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; and Does 11-20, inclusive.**

**(Fraud – Deceit and Concealment)**

67.     Plaintiffs refer to the allegations contained in Paragraphs 1 through 62, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

68.     As alleged above, between April and August 2024, Aryeh formed and began operating two new MCA companies, Stone Street and Clear Funding, in direct competition with Creation. Aryeh omitted disclosing to Creation or CYS members of Stone Street and Clear Funding.

69.     Around November 2024, Aryeh represented to Plaintiffs that Creation had more than $1.7 million dollars in receivables, while Creation's real default rate was over 50% and most accounts could not be collected.

70.     Upon information and belief, Aryeh's failure to alert other Creation and CYS members of the mounting defaults allowed him and his co-conspirators to

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

continue operations and continue paying his own unapproved fees before Creation became insolvent

71. To further his fraudulent scheme, Aryeh, as the administrator of Creation's email account, changed passwords for Yedidsion and Sarraf so neither could access Creation's communications with merchants and verify his fraudulent conduct. Aryeh also locked Yedidsion and Sarraf out of Creation's DocuSign account to stop them from gaining access to copies of agreements Aryeh had signed with merchants. Without access to Creation emails and signed agreements, no one else could contact the merchants to collect on Creation's behalf.

72. Upon gaining access to Creation's emails and agreements, Plaintiffs allege and believe that Aryeh was using his ailment as a cover to not communicate with other Creation and CYS members. Aryeh's email records show he was sending and receiving dozens of emails daily to merchants and brokers for new and existing deals at the same time he stopped communicating with Yedidsion and Sarraf. It was further discovered that Aryeh had planned and was carrying out a campaign with a competing MCA company, Stone Street, owned and wholly controlled by Aryeh, to collect as much of Creation's receivable as possible before Creation's deliberate collapse.

73. Aryeh and the MCA Entities siphoned over $400,000 from Creation merchants. Aryeh and the MCA Entities told Creation's merchants that funds redirected to Stone Street were paying off their balance with Creation. Further, Aryeh and the MCA Entities also sent Creation merchants emails offering them a discount if they paid the remaining balance due to Creation directly to Stone Street. This was untrue.

74. As a direct and proximate result of the actions of Aryeh and the MCA Entities, and each of them, Plaintiffs have been harmed and sustained damaged in an amount to be determined at the time of trial, not less than $1,000,000.00.

COMPLAINT

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

### THIRD CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 21-30, inclusive.**

**(Aiding and Abetting Fraud)**

75. Plaintiffs refer to the allegations contained in Paragraphs 1 through 70, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

76. Aryeh, the MCA Entities and Mirin participated in a scheme to defraud Plaintiffs of their valuable contributions and backing to enrich themselves, as alleged hereinabove.

77. Mirin had actual knowledge that Aryeh was engaging in such fraud, because Mirin was alerted by Sarraf regarding Aryeh's actions and Mirin continued to assist Aryeh with that knowledge, and on information and belief, have at all relevant times been officers, agents, employees, and/or owners whose knowledge and intent is imputed to the Defendant MCA Entities.

78. Mirin and the MCA Entities knowingly gave substantial assistance, encouragement, and/or actively participated in Aryeh's fraud by willfully draining Creation's most valuable asset, the revenue stream, into the Defendant MCA Entities.

79. On information and belief, Aryeh and Mirin have facilitated rampant self-dealing, as alleged herein, and have been greatly enriched as a result.

80. Defendants, and each of them, intentionally concealed their fraudulent conduct, which prevented Plaintiffs from discovering their scheme, notwithstanding their exercise of due diligence.

81. As a direct and proximate result of the Defendant's conduct, acts, and omissions alleged above, Plaintiffs are entitled to recover the damages they sustained and will sustain, including any income, gains, compensation, profits, and advantages obtained, received, or to be received by Defendants, or any of them, arising from the wrongful acquisition of Plaintiffs' contributions to Creation, including prejudgment

interest. Plaintiffs are entitled to an order requiring Defendants, jointly and severally, to render an accounting to ascertain the amount of such proceeds.

82.    As a direct and proximate result of Defendants' wrongful conduct, acts, and omissions alleged hereinabove, Plaintiffs have been damaged, and Defendants have been and will continue to be unjustly enriched, in an amount that shall be assessed at trial, but which vastly exceeds $700,000, and for which restitution and/or non-restitutionary disgorgement is appropriate. Such should include the imposition of a constructive trust; a declaration by this Court that Defendants are jointly and severally the constructive trustee(s) for the benefit of Plaintiffs; and an order that Defendants convey to Plaintiffs all of the profits, assets, property, and ill-gotten gains received or to be received by Defendants, which are traceable to Defendants' wrongfully acquired financial and other contributions made by Plaintiffs.

83.    Defendants' wrongful conduct, acts, and omissions have proximately caused and will continue to cause Plaintiffs' substantial injury and damage, much of which cannot be reasonably or adequately measured or compensated for money damages. The harm this wrongful conduct will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if such wrongful conduct is allowed to continue without restraint. Plaintiffs are entitled to an injunction during the pendency of this action, and permanently enjoining Defendants, their officers, agents, and employees, and all persons acting in concert with them, from engaging in such further tortious conduct.

84.    Defendants' wrongful conduct constitutes oppression, fraud, and/or malice under Cal. Civ. Code § 3294, entitling Plaintiffs to an award of punitive damages appropriate to punish or set an example of Defendants in an amount to be determined at trial.

//

//

//

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

## FOURTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding
Group, LLC; and Does 31-40, inclusive.**

**(Conversion)**

85.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 80, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

86.    Defendants wrongfully redirected and took possession of funds they had access to because of their position at Creation, but which were rightfully the property of Plaintiffs and their investors. Defendants diverted Creation's merchant payments and internal funds to the MCA Entities accounts or accounts they controlled in order to use the funds for personal gain.

87.    Aryeh attempted to conceal his wrongdoing by representing that Creation had more than $1.7 million dollars in receivables, when in reality Creation's default rate was over 50% and most of the merchant accounts could not be collected. Aryeh's failure to alert the other Creation and CYS members of the mounting default allowed him to continue operations and continue paying his own unapproved fees before Creation's planned insolvency.

88.    After Yedidsion confronted Aryeh on December 17, 2024, Aryeh immediately ceased communications and asked to not be disturbed because of an ongoing illness. Shortly after, as the administrator of Creation's email account, Aryeh changed passwords for Yedidsion and Sarraf so neither could access Creation's communications with merchants and verify his breaches.

89.    Aryeh also locked Yedidsion and Sarraf out of Creation's DocuSign account to stop them from gaining access to copies of agreements Aryeh had signed with merchants. Without access to Creation emails and signed agreements, no one else could contact the merchants to collect on Creation's behalf, further concealing the diversion of funds and using the funds to secure benefits for Defendants. Aryeh sent letters to Creation's merchant clients, telling them that the Defendant MCA

Entities were the one and the same as Creation. The Defendant MCA Entities accepted transfers, converted these funds for Defendants' use and profit.

90.    As a direct and proximate result of Defendants' conduct, Plaintiffs and their investors suffered damages in an amount to be proven at trial, in an amount exceeding $1,000,000.00.

## FIFTH CAUSE OF ACTION

### Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 41-50, inclusive.

### (Violations of Federal Civil RICO)

91.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 86, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

92.    The federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, provides a private right of action for plaintiffs to recover against defendants who harm them by conducting an enterprise through a pattern of racketeering activity, as well as defendants who conspire to do so.

### A. Predicate Offenses

93.    **Embezzlement** (Cal. Pen. Code § 503; Cal. Pen. Code § 496) - the fraudulent appropriation of property that was entrusted to Defendants. Plaintiffs entrusted property to the Defendants, but Defendants converted that property for their own benefit by, among other things, diverting revenue to the Defendant MCA Entities, which revenue was received and kept by Individual Defendants. When Defendants converted the property, Defendants had the intent to deprive the owners of its use. Indeed, Defendants set up the Defendant MCA Entities, their bank accounts, took exclusive and unauthorized control over Plaintiffs' email accounts, and systems so that Plaintiffs' property and income generated by Plaintiffs' property could be received and kept by Defendants without Plaintiffs' knowledge or consent.

94.    **Unauthorized Computer Access** (Cal. Penal Code § 502c) – Individual Defendants improperly accessed Plaintiffs' personal data, including exclusive control

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

of email accounts, web browser activity, by the unauthorized computer access without Plaintiffs' knowledge or consent.

95.    **Identity theft** (18 U.S.C. § 1028 and Cal. Penal Code § 530.5) - Defendants willfully obtained Plaintiffs' information via Plaintiffs' email accounts with the purposes to obtain, or attempt to obtain, credit, goods, services, money, property, or real property without Plaintiffs' consent and Defendants used this information and obtained credit, goods, services, money, property, or real property.

96.    **Interstate transportation of stolen money** (18 U.S.C. § 2314-2315) - a transfer of stolen funds from Creation's merchant clients payments and Plaintiffs' bank accounts in California to Defendants' bank accounts in New York.

97.    **Theft by false pretenses** (Cal. Pen. Code § 532) - Defendants represented to Plaintiffs in writing and orally that Creation was financially healthy, but Defendants knew that representation was false and made it with the intent to cover up Defendants' scheme to divert and convert money from Creation and Creation's merchant payments to Defendants' MCA Entities.

98.    **Extortion** (Cal. Pen. Code § 518) - Aryeh began sending multiple texts threatening lawsuits against Plaintiffs for exposing him. Defendants threatened that they would sue Plaintiffs and hold them liable in an effort to cause Plaintiffs to not pursue legal action against Defendants. These threats caused Plaintiffs to give Defendants money, property, or delay brining lawsuit.

99.    **Wire fraud** (18 U.S.C. § 1343) - through unauthorized transfer of stolen funds--both from unauthorized and improper loans and from money stolen from Creation's merchant client payments from California-based banks:

100.    Defendants knowingly participated in a scheme to exploit Plaintiffs and others by fraudulently inducing them to make significant financial and other contributions to start Creation, which Defendants exploited to enrich themselves, as alleged hereinabove.

101.   In furtherance of their scheme, Defendants transmitted, or caused to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343. The specific wirings in furtherance of the scheme to defraud Plaintiffs include, but are not limited to the following:

a.   Aryeh represented he was a member of an existing MCA company named Alliance Capital US, LLC ("Alliance US")

b.   Aryeh further represented that between 2020 and 2022 Alliance US had placed millions of dollars in MCA funds with an average default rate of only 4-5%. This meant that only 4-5% of Alliance US's deals were uncollectable and needed further legal action to recover debts.

c.   Aryeh represented investors in an MCA managed by Aryeh should expect returns of 50% to 80% per annum on their investments. The success of raising capital for a new entity relied on Aryeh providing positive financial information from Alliance US.

d.   Aryeh emailed copies of form 1065 tax returns for Alliance US and Profit and Loss statements to Yedidson and other investors.

e.   Aryeh represented that his "AVG. Default rate" was 2.7%."

f.   Aryeh agreed he would not operate or compete with Creation using any other MCA platform unknown to Creation's members

g.   Aryeh agreed that written approval was needed from another member of Creation for any expenses over $5,000.

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

102. Defendants intended Plaintiffs to rely on their express promises, representations, and assurances and in good faith, Plaintiffs reasonably did rely on them to their detriment.

103. During this period, Plaintiffs further invested their time, reputation, and connections to gather further working capital for Creation, which included the transmission of emails and cellular telephonic communications.

104. Defendants knew or could have reasonably foreseen that their promises and representations would be relied upon by Plaintiffs.

105. Aryeh, Mirin, and the Defendant MCA Entities each knew of, and participated in, numerous acts of wire fraud. Defendants knowingly and repeatedly accepted capital contributions from Plaintiffs to start up Creation with no intention of honoring their promises and representations once Creations was operative. As alleged hereinabove, once Creation was operative, Defendants began the unauthorized diversion of Creation merchant payments.

106. It was reasonably foreseeable that interstate wire communications would be used in connection with Defendants' scheme. In addition to the fraudulent wire transmissions described above, Defendants relied on wires to receive the financial contributions of Plaintiffs and to invest these funds in their fraudulent scheme. On information and belief, Defendants received many or all of these funds through an online wire, deposited such funds into Defendants' accounts through an online wire, and relied on email or other forms of electronic communication to exchange information about their receipt and usage of these misappropriated funds and contributions.

107. Aryeh and Mirin used Plaintiffs' contributions to fund and to launch dozens of shell MCA entities (the Defendant MCA Entities). The Defendant MCA Entities furthered Defendants' scheme by harboring and exploiting Creation's revenue streams and concealing Defendants' embezzlement of funds and self-dealing.

108.   When Aryeh started the Defendant MCA Entities, he improperly diverted most of Creation's merchant payments over to the new company, which he now manages solely. Each of these predicate acts by Aryeh and/or Mirin were committed within the scope of their employment, officership, and/or directorship position(s) at, or their agency relationship with, the Defendant MCA Entities.

109.   In addition, Aryeh, with the assistance and/or cooperation of Mirin and/or the Defendant MCA Entities, brazenly engaged in self-dealing. For instance, Aryeh has usurped Creation's merchant payments, costing Plaintiffs over $1,700,000 in lost payments.

110.   Defendants knew their representations and promises alleged hereinabove were false when made and they had no intention of performing such promises and failed to perform them. Once they convinced Plaintiffs to invest in Creation, Defendants' aim was to develop valuable merchant clients and exploit Creation for their own enrichment. Defendants intentionally concealed their fraudulent conduct, which prevented Plaintiffs from discovering their scheme, notwithstanding Plaintiffs' exercise of due diligence. Plaintiffs would not have contributed to Creation, if they knew of Defendants' true intentions and scheme.

111.   Aryeh and Mirin directly and indirectly committed or aided and abetted these numerous predicate acts of fraud and wire fraud in furtherance of their scheme. The predicate acts by the Defendant MCA Entities were committed by Aryeh, Mirin, and/or representatives of such entities acting through, or on behalf of and for the benefit of those entities. Each of these Defendants voluntarily and intentionally committed and/or aided and abetted the commission of the predicate acts to effectuate and/or further their illicit scheme.

### B. **Pattern of Racketeering Activity**

112.   Defendants committed multiple predicate acts of wire fraud which are indictable under the provisions of the U.S. code enumerated in 18 U.S.C. § 1961(1)(B). Defendants did knowingly, willfully, and unlawfully conduct or

participate, directly or indirectly, in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

113.   Aryeh, Mirin, and/or the Defendant MCA Entities committed, or conspired with or aided and abetted other Defendants in committing, at least two predicate acts of wire fraud constituting a continuous course of conduct spanning a period from at least February 2023 to the present. The temporal duration and the number of predicate acts are so extensive as to constitute a pattern of racketeering activity with, at minimum, closed-ended continuity, though on information and belief, such conduct is continuing--e.g., Defendants are continuously siphoning Creation's revenue stream and continuing to operate Defendant MCA Entities--and there exists a specific threat it will persist indefinitely, constituting a pattern of racketeering activity that is open-ended.

114.   In order to implement their scheme, Defendants used the interstate wires to defraud Plaintiffs, as alleged herein. Such acts not only shared a common or related result, participants, and victims, but also shared a common method of commission. Defendants' acts of racketeering were all committed for the purpose of defrauding Plaintiffs and others of valuable financial and other contributions in furtherance of a scheme to start-up Creation to wrongfully exploit for Defendants' self-enrichment.

115.   On information and belief, Aryeh, Mirin, and the Defendant MCA Entities' racketeering yielded financial and other contributions from Plaintiffs, which were, in turn, used to develop valuable merchant clients that Aryeh and Mirin along with other Defendants exploited to collect Creation merchant revenues while Plaintiffs provided the underlying capital.

### C. Violation of Section 1962(c)

116.   Aryeh, Mirin, and the Defendant MCA Entities are "persons" within the definition of 18 U.S.C. § 1961(3), and at all relevant times were employed by and/or associated with Defendant MCA Entities.

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

117.    The Defendant MCA Entities are an "enterprise" as defined by 18 U.S.C. § 1961(4) (the "Enterprise"), and engaged in, and its activities affected, interstate and foreign commerce. At all relevant times, Defendant MCA Entities had an existence separate and distinct from the pattern of racketeering the rest of the Defendants engaged.

118.    Aryeh, Mirin, and the Defendant MCA Entities wrongfully conducted or participated, directly or indirectly, in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

119.    Aryeh, Mirin, and the Defendant MCA Entities infiltrated Creation. Aryeh was a member of CYS, which is the Manager of Creation, and Mirin was a consultant hired to work for Creation. The Defendant MCA Entities, which on information and belief are largely owned, operated, and/or controlled by Aryeh and Mirin, have now usurped Creation's merchant payments.

120.    Aryeh, Mirin, and the Defendant MCA Entities' racketeering acts were committed in furtherance of a common fraudulent scheme to wrongfully exploit the financial and other contributions of Plaintiffs to develop valuable MCA merchant payments, which Aryeh, Mirin, and the Defendant MCA Entities then illicitly diverted to enrich themselves.

121.    Aryeh induced Plaintiffs to contribute their money and resources to Creation in the belief they were starting a legitimate MCA business, but Plaintiffs were merely providing capital, support, and/or services to a coordinated, covert profiteering scheme for Defendants' private gain.

122.    Based on Aryeh and Mirin's fraudulent misrepresentations, Plaintiffs contributed an amount not less than $1,000,000.00 of capital to Creation and invested their time, reputation, and connections to secure further funding.

123.    Defendants then furthered the scheme by diverting from Creation to the Defendant MCA Entities over $1,000,000.00 in Creation's merchant payments.

124.    In addition, on information and belief, Aryeh along with other Defendants have engaged in unbridled self-dealing. On information and belief, the Defendant MCA Entities facilitated and/or aided and abetted Defendants' conversion of Creation's merchant client payments by accepting such ill-gotten monies, and helping to conceal Defendants' fraudulent conduct.

125.    On information and belief, Aryeh, Mirin, and the Defendant MCA Entities have been and will continue to be enriched by their exploitation of Creation's assets, made possible by the Plaintiffs' fraudulently obtained funding and contributions.

126.    The unlawful actions of Aryeh, Mirin, and the Defendant MCA Entities directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs in their business and property. In furtherance of their scheme and through fraudulent acts, Defendants caused Plaintiffs to make financial and other contributions to Creation, and usurped MCA merchant client payments to which Defendants were not entitled. But for Defendants' knowing misrepresentations, Plaintiffs would not have made such contributions and it was reasonably foreseeable to Defendants that their scheme would harm Plaintiffs.

127.    Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), Plaintiffs are hereby entitled to recover three times the damages they sustained, reasonable attorneys' fees, and costs of litigation, as well as any other relief as authorized by statute.

## SIXTH CAUSE OF ACTION

### Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; and Does 51-60, inclusive.

### (Negligent Misrepresentation)

128.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 123, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

129.   Aryeh's representations were false, and at the time Aryeh made the representation, knew, or should have known, that the representation was false, and that Plaintiffs would rely upon the representations.

130.   Plaintiffs are informed and believe, and on that basis allege, that Aryeh intended for Plaintiffs to rely on his representation. When Aryeh made the representations, he did not have sufficient or accurate information or reason to believe that the representation was true and accurate or that the suppression and concealments of facts should have been made.

131.   At all times described herein, Aryeh concealed from Plaintiffs his lack of information or basis for making those representations or made the representations accurately and their failure to make the disclosures described above.

132.   Plaintiffs justifiably relied on Aryeh's representations and, as a result invested in Creation, found investors, entered into the Agreement, and became a member of Creation.

133.   Plaintiffs' reliance on Aryeh and his representations were justified because Aryeh had superior knowledge and expertise concerning the MCA business.

134.   As a direct and proximate result of Aryeh's negligent misrepresentation, Plaintiffs have suffered damages, including attorneys' fees, costs, and expenses, and damages affiliated with starting-up Creation. The amount of these damages are in an amount exceeding $1,700,000.00.

## SEVENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 61-70, inclusive.**

### (Negligence)

135.   Plaintiffs refer to the allegations contained in Paragraphs 1 through 130, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

136.   Defendants, on the one hand, and Plaintiffs, on the other hand, had a relationship under which Defendants owed Plaintiffs a duty to act in a reasonable

manner. Defendants breached this duty, by their conduct of locking out Plaintiffs' from Plaintiffs' email accounts, misrepresenting Creations' financial health, and diverting funds from Creations' merchant clients to the Defendant MCA Entities. Defendants also represented in the Position Stacking Chart that 50% of advances will be 2nd position and another 30% would be 3rd; in reality almost all deals were 3rd or higher, which lead to over 70% defaults. Defendants also commingled investor assets, resources, operations, commercial activities between Creation and the Defendant MCA Entities.

137.    The conduct of Defendants outlined above was negligent. As a result of Defendants' negligence, Plaintiffs have suffered and continue to suffer considerable losses in an amount to be subject to proof. Those damages include, without limitation, the loss of the money, equipment, employees, revenue, and other assets, and the profits generated therefrom exceeding $1,000,000.00.

138.    Defendants' negligence was a substantial factor in causing the harm to Plaintiffs.

## EIGHTH CAUSE OF ACTION

### Against Michael Chiya Aryeh; and Does 71-80, inclusive.

### (Breach of Fiduciary Duty)

139.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 134, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

140.    As a member of a limited liability company, Defendant Aryeh owed Plaintiffs a duty of utmost care, integrity, honesty and loyalty. Defendant also owed Plaintiffs a duty of good faith and fair dealing.

141.    Aryeh breached his fiduciary duties to Plaintiffs by, among other things: (a) unauthorized access to Plaintiffs' computer systems to alter, transfer, or redirect revenue from the Plaintiffs to Defendant; (b) Defendant usurped Plaintiffs' merchant payments when Defendant was not authorized to do so by Plaintiffs; secretly forming and operating two competing MCA companies without informing or obtaining

approval from the other members of Creation or CYS; initiating unauthorized wire transfers exceeding $5,000.

142.    Aryeh violated his fiduciary duty of loyalty to Plaintiffs by engaging in the conduct alleged hereinabove, including but not limited to engaging in competition with Creation, helping others compete with Creation, usurping corporate opportunities, and concealing and/or failing to disclose information regarding his competitive activities and opportunities.

143.    Aryeh did not disclose such acts to Plaintiffs or seek Plaintiffs approval, nor did Plaintiffs approve of them.

144.    As the proximate result of Aryeh's conduct, Plaintiffs have sustained and will continue to sustain damages in amounts and types according to proof at trial and in excess of $1,000,000.00.

145.    By virtue of his wrongful actions, Aryeh gained properties, income, and/or other assets that would, but for Aryeh's breaches of fiduciary duties, belong to Plaintiffs or Plaintiffs' partnerships. To provide a proper remedy, pursuant to California Civil Code section 2224, the Court should impose a constructive trust for the benefit of Plaintiffs with respect to the properties, assets, and proceeds - including proceeds from competing businesses and the sale of properties - obtained by Aryeh and the Defendant MCA Entities in breach of his fiduciary duties.

146.    Unless and until enjoined by this court, Aryeh's breaches of fiduciary duties will continue to cause great and irreparable injury to Plaintiffs for which Plaintiffs lack any adequate remedy at law. Plaintiffs will be irreparably harmed and/or suffer injury that cannot be fully compensated by monetary damages if Aryeh is not permanently restrained from engaging in further competition with Plaintiffs, misappropriating income and property of Creation, and from usurping corporate opportunities.

147.    Plaintiffs are informed and believe, and on that basis allege, that Aryeh's breaches of his fiduciary duties were willful and intentional, committed with malice,

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

fraud, and oppression, and with the wrongful intention of injuring Plaintiffs, and that an award of exemplary or punitive damages is warranted as against Aryeh and the Defendants in an amount to be proven at trial.

148.   As a result, Plaintiffs have been damaged in an amount not less than $1,000,000.00 to be proven at trial.

## <u>NINTH CAUSE OF ACTION</u>

**Against Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 81-90, inclusive.**

**(Aiding and Abetting Breach of Fiduciary Duty)**

149.   Plaintiffs refer to the allegations contained in Paragraphs 1 through 144, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

150.   Plaintiffs are informed and believe that Defendant Mirin, Defendant MCA Entities, and Does 1 through 10 ("Defendant Entities") are owned and/or controlled by Aryeh and Mirin and/or Does 11 through 20 and that they have been used for the purpose of providing a vehicle to both facilitate and conceal Aryeh's breaches of fiduciary duties including those alleged herein and the extent thereof.

151.   At all times relevant herein Mirin and the Defendant MCA Entities had and continue to have actual knowledge of the fiduciary duties Aryeh owed to Plaintiffs.

152.   Mirin and the Defendant MCA Entities engaged in affirmative acts to aid and abet and conceal Aryeh's breaches of fiduciary duty, have provided substantial encouragement and assistance to Aryeh to breach his fiduciary duties owed to Plaintiffs, and that Aryeh has otherwise acted through and in concert with Mirin and the Defendant MCA Entities in breaching the fiduciary duties he owes to Plaintiffs and concealing his unlawful acts and the extent thereof.

153.   As the proximate result of Mirin and the Defendant MCA Entities conduct, Plaintiffs have sustained and will continue to sustain damages in amounts and types according to proof at trial, not less than $1,000,000.00.

154.    By virtue of their wrongful actions, Mirin and the Defendant MCA Entities gained properties, income, and other assets that would, but for Aryeh's breaches of fiduciary duties and their aiding and abetting thereof, belong to Plaintiffs. To provide a proper remedy, pursuant to California Civil Code section 2224, the Court should impose a constructive trust for the benefit of Plaintiffs with respect to the properties, assets, and proceeds - including proceeds from competing businesses and the sale of properties - obtained by Mirin and the Defendant MCA Entities as a result of Aryeh's breaches of his fiduciary duties.

155.    Unless and until enjoined by this Court, the breaches of fiduciary duties and the other acts by Mirin and the Defendant MCA Entities alleged herein and in furtherance thereof will cause great and irreparable injury to Plaintiffs for which Plaintiffs lack any adequate remedy at law.

156.    Mirin and the Defendant MCA Entities have engaged in the acts alleged herein with the intent to harm Plaintiffs, and with callous indifference or a wanton disregard for the rights of others, including Plaintiffs and its other shareholders and employees. Because Mirin and the Defendant MCA Entities have, in engaging in the acts alleged herein, acted with and been guilty of oppression, fraud, and malice, an award of punitive and exemplary damages against them in an amount to be established at trial is warranted.

157.    Mirin and the Defendant MCA Entities actions in aiding and abetting Aryeh's breaches of fiduciary duties and unlawful competition, will - unless and until enjoined by order of this Court - cause great and irreparable injury to Plaintiffs.

### TENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh and Does 91-100, inclusive.**

**(Breach of Contract)**

158.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 153, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

159.    At all times relevant to this action, the Operating Agreement was a valid and binding agreement.

160.    The Operating Agreement stipulated several material covenants to be followed by Aryeh, who was wholly in charge of Creation's operations. Aryeh agreed:

    (a) to use his existing network of brokers to find leads;

    (b) to manage Creation's operations and act as Servicer based on the MCA Services Agreement signed by Aryeh;

    (c) to not be paid any management, maintenance, or service fees until Creation's debt of $1M plus interest at 15% per annum was paid to Chopra LLC. Any remaining profits would be split between Creation's members, with Aryeh receiving a large percentage for his efforts through his ownership interest in CYS;

    (d) that written approval was needed from another member of Creation for any expenses over $5,000; and

    (e) he would not operate or compete with Creation using any other MCA platform unknown to Creation's members.

161.    Plaintiffs have performed all material conditions, covenants, and promises required to be performed by them in accordance with the terms and conditions of the Operating Agreement.

162.    Defendant breached his contractual obligations under the Operating Agreement by, inter alia: (1) forming and operating two competing MCA companies—Stone Street and Clear Funding—without informing or obtaining approval from the other members of Creation or CYS; (2) initiating wires over $5,000 without the secondary approval required by the Agreement, processing dozens of wires between May 2024 and December 2024 without secondary member approval;

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

(3) misleading Plaintiffs with false information and hiding Creation's merchant true default rate; (4) paying unapproved fees prior to service of Creation's debt of $1M; and (5) using competing Defendant MCA Entities to divert collection of Creation's receivables.

163.    As a direct and proximate cause of Defendant's breaches of contract as alleged herein, Plaintiffs have been damaged in an amount not less than $1,000,000.00.

## ELEVENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 100-110, inclusive.**

**(Violation of Computer Fraud and Abuse Act under 18 U.S.C. § 1030)**

164.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 159, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

165.    In order to disable Creation, to render Creation non-functional or less functional, to corrupt Creation's data, and/or block Creation's and its agents access to and unfettered use of Creation's computer systems, Defendants knowingly caused the transmission of a program, information, a code, or command, and as a result of such conduct.

166.    Defendants thereafter knowingly and intentionally accessed the protected computer without authorization and obtained data and information of value therefrom.

167.    Once Defendants gained access to Creation's email account, Defendants, at Aryeh's direction, changed passwords for Yedidsion and Sarraf so neither could access emails with merchants and verify his breaches.

168.    The Defendants also locked Yedidsion and Sarraf out of Creation's DocuSign account to hide agreements Aryeh signed with Creation's merchants. Without access to the emails and signed agreements, no one else could contact the merchants to collect on Creation's behalf.

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

169. Defendants thereafter knowingly and intentionally accessed the protected computer without authorization and in access of authorized access, as a result of such conduct, recklessly caused damage to the protected computer and to Creation, including by, among other things, changing and stealing information contained in the protected computer.

170. Upon gaining access to Creation's emails and agreements, Plaintiffs allege and believe that Aryeh stopped communicating with other Creation and CYS members under the auspices of ailment. Aryeh's email records show he was sending and receiving dozens of emails daily to merchants and brokers for new and existing deals at the same time he stopped communicating with Yedidsion and Sarraf.

171. Aryeh had planned and was carrying out a campaign through a competing MCA company, Stone Street, owned and wholly controlled by Aryeh, to collect as much of Creation's receivable as possible before Aryeh deliberately collapsed Creation.

172. Through Defendants' unauthorized conduct, Defendants siphoned and converted over $400,000 from Creation merchants. Defendants emailed Creation's merchants that funds redirected to Stone Street were paying off their balance with Creation. Further, Defendants also used the Creation email accounts to send Creation merchants emails offering them a discount if they paid the remaining balance due to Creation directly to Stone Street.

173. Defendants' unauthorized access of the protected computer has caused and will continue to cause damage exceeding $5,000 per one-year period.

## TWELFTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 111-120, inclusive.**

**(Violation of California Penal Code § 502)**

174. Plaintiffs refer to the allegations contained in Paragraphs 1 through 169, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

175.    Plaintiffs own or license the computers, email accounts, DocuSign accounts, computer servers and systems, computer network, and computer programs that operate its business and Plaintiffs have a proprietary interest in the data, images, taxonomy, ontology and copyrighted product descriptions ("Data") stored in its computers.

176.    Defendants knowingly accessed, without permission, Plaintiffs' Data, computers, email accounts, DocuSign accounts, computer servers and systems, or computer network in order to wrongfully obtain, copy, and use Plaintiffs' Data in violation of Penal Code § 502(c)(1)(B).

177.    Defendants knowingly accessed and without permission took, copied, and/or made use of Plaintiffs' Data from Plaintiffs' computers, email accounts, DocuSign accounts, computer servers and systems, or computer network in violation of California Penal Code § 502(c)(2).

178.    Defendants knowingly and without permission disrupted or caused the disruption of Plaintiffs' computer services and/or have knowingly and without permission denied or caused the denial of computer services to authorized users of Plaintiffs' computers, email accounts, DocuSign, computer servers, systems, or network in violation of California Penal Code § 502(c)(5).

179.    Defendants knowingly and without permission provided or assisted in providing a means of accessing Plaintiffs' computers, email accounts, DocuSign accounts, computer servers and systems or computer network in violation of California Penal Code § 502(c)(6).

180.    Defendants knowingly and without permission accessed or caused to be accessed Plaintiffs' computers, email accounts, DocuSign accounts, computer servers and systems or computer network in violation of California Penal Code § 502(c)(7).

181.    Plaintiffs have suffered and continue to suffer damage and irreparable harm as a result of Defendants' violations of California Penal Code § 502.

182. Defendants' conduct has caused irreparable and incalculable harm and injuries to Plaintiffs, including lost reputation and goodwill, and, unless enjoined, will cause further irreparable and incalculable injury, for which Plaintiffs have no adequate remedy at law.

183. Defendants willfully violated California Penal Code § 502 in disregard and derogation of Plaintiffs' rights and the rights of legitimate users of Plaintiffs' computer systems and email accounts, and their actions were oppressive, fraudulent, and done with malice.

184. Pursuant to California Penal Code § 502(e), Plaintiffs are entitled to injunctive relief, compensatory damages, exemplary damages, attorneys' fees, costs and other equitable relief.

## THIRTEENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 121-130, inclusive.**

**(Violation of California Penal Code § 496)**

185. Plaintiffs refer to the allegations contained in Paragraphs 1 through 180, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

186. Penal Code § 496(a) provides "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a state prison, or in a county jail for not more than one year."

187. Penal Code § 496(c) states that "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees."

188.   As alleged herein and above, unbeknownst to Plaintiffs and without consent, Defendants stole Creation's merchant payment revenue by diverting merchant customer payments to the Defendant MCA Entities.

189.   As alleged herein and above, Defendants hid the theft from Plaintiffs by: (1) representing to Plaintiffs that Creation's financial health was good when it was not, to keep taking revenue; (2) Defendants gained control of Plaintiffs' email accounts to tell Creation's merchants to pay directly to the Defendant MCA Entities; (3) by locking Defendants' out of their email accounts; and (4) by wire transferring from Creation's bank accounts without seeking member authorization.

190.   In reliance on the repeated representations and assurances by Defendants, particularly, Aryeh, about investment opportunity, as set forth herein and above, Plaintiffs agreed to enter into the Agreement with Defendants. See Exhibit "1" (Agreement).

191.   Aryeh continued to embezzle and defraud Creation by performing multiple refinances to the same merchant, despite it failing to repay prior advances. This process allowed Aryeh to hide that Creation's default rate was over 60%, and not the 4-5% Aryeh represented.

192.   By November 2024, Aryeh represented that Creation had more than $1.7 million dollars in receivables, when in reality Creation's default rate was over 50% and most of the accounts could not be collected. Aryeh's failure to alert other Creation and CYS members of the mounting defaults bought him extra time to keep diverting fees before Creation's impending insolvency.

193.   Aryeh's email records show he was sending and receiving dozens of emails daily to merchants and brokers for new and existing deals at the same time he stopped communicating with Yedidson and Sarraf. Aryeh used the Defendant MCA entities, like Stone Street, owned and wholly controlled by Aryeh, to collect and convert as much of Creation's receivable as possible.

194.    Beginning in December 2024, Aryeh contacted all Creation's merchants to inform them Stone Street and Creation were one and the same, and to make payments due Creation to Stone Street. Emails show Aryeh offered discounts for early payoffs, made to Stone Street directly.

195.    Knowing his work for Stone Street directly interfered with Creation's ability to collect Creation's receivables, Mirin continued to help Aryeh identify new merchants which Aryeh could fund using the money embezzled from Creation. But for Mirin's aiding and abetting Aryeh and Stone Street, Aryeh could not have diverted Creation's funds into Stone Street

196.    Aryeh also instructed Creation's merchants to not speak with anyone else regarding monies due to Creation. As the point person, Aryeh understood and relied on the merchants trusting him and not questioning changing the "pay to" entity. This is corroborated with Aryeh's emails with merchants who believed their payments to Stone Street were satisfying debts to Creation.

197.    Having severed Creation's income streams, Aryeh used his Stone Street bank account at Optimum Bank to collect the diverted payments. By March 2025, with Creation's lifeline cut off, it was unable to meet its debt service obligations or pay operating expenses

198.    Since November 2024, Stone Street and Aryeh collected and continue to collect several hundred thousand dollars in payments belonging to Creation. Aryeh also embezzled tens of thousands of dollars in unearned fees from Creation's bank accounts.  With its cash flow obstructed, Creation has been left with over $700,000 in debt owed to its investor, Taranjeet Chopra, LLC

199.    As a factual and legal result of Defendant's misconduct, as alleged herein and above, Plaintiffs have been damaged for an amount in excess of $1,000,000.00 to be proven at the time of the trial together with the interest thereon.

//

//

COMPLAINT

200. Additionally, Defendants' conduct was willful and malicious and without regard for Plaintiffs well-being, thus entitling Plaintiffs to punitive damages pursuant to Civ. Code § 3294.

201. Moreover, Plaintiffs have incurred attorney's fees and costs, all of which Plaintiffs are entitled to recover from Defendants pursuant to the Agreement or Penal Code § 496(c).

## FOURTEENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC;**

**Kian Mirin; and Does 131-140, inclusive.**

**(Unfair Competition in Violation of Cal. Bus. And Prof. Code Section 17200, *et seq*.)**

202. Plaintiffs refer to the allegations contained in Paragraphs 1 through 167, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

203. By their actions, as described above, Defendants have engaged in illegal, fraudulent and unfair business practices.

204. As a direct consequence of Defendants' illegal, fraudulent and unfair business practices, in violation of section 17200, Plaintiffs suffered an actual injury and have lost money and/or property as a result of Defendants' acts of unfair competition.

205. Plaintiffs are entitled to equitable and injunctive relief to prevent Defendants from continuing to engage in acts of unfair competition, and to compensate and remedy the substantial harm caused by Defendants' past acts. Additionally, Plaintiffs are entitled to adequate restitution, including the payment of their attorney fees and costs incurred in bringing and prosecuting this action, pursuant to § 17200.

//

//

COMPLAINT

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

**FIFTEENTH CAUSE OF ACTION**

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 141-150, inclusive.**

**(Civil Conspiracy)**

206.   Plaintiffs refer to the allegations contained in Paragraphs 1 through 201, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

207.   Defendants conspired, combined and agreed for the purpose of engaging in the wrongful acts set forth above, with the express purposes of enabling Defendants to unfairly compete with Plaintiffs, and to harm Plaintiffs in their trade or business.

208.   Defendants, through their conspiracy and the acts set forth above, engaged in unfair competition with Plaintiffs and caused Plaintiffs harm in their trade or business.

209.   As a consequence of Defendants' conspiracy, Plaintiffs have suffered damages in an amount to be proven at trial but exceeding $1,000,000.00.

210.   Defendants have acted willfully and maliciously to harm Plaintiffs and thus, Plaintiffs are entitled to punitive damages.

**SIXTEENTH CAUSE OF ACTION**

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 151-160, inclusive.**

**(Intentional Interference with Prospective Economic Relationships)**

211.   Plaintiffs refer to the allegations contained in Paragraphs 1 through 206, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

212.   At the time of the events in question, economic relationships existed between Creation, on the one hand, and its merchant customers containing a probability of future economic benefits to Creation.

213.   At all relevant times, Defendants knew of these economic relationships.

214.   Defendants, and each of them, interfered with the existing and

prospective economic relationships by their misappropriation of unfair, unlawful, and/or fraudulent business and/or trade practices, and infringement. Defendants, and each of them, knew such interference was certain or substantially certain to occur as a result of their actions.

215.   As a proximate result of Defendants' intentional interference with these economic relationships, said relationships never generated the economic benefits to Creation that it otherwise probably would have obtained therefrom. Thus, Creation has been damaged in an amount yet to be determined and to be proven at trial, but exceeding $1,000,000.00.

216.   Plaintiffs are entitled to punitive or exemplary damages as Defendants acted with the specific intent to inflict harm and injury through the intentional interference with economic relationships and because Defendants' conduct constitutes willful and malicious behavior.

## SEVENTEENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 161-170, inclusive.**

**(Negligent Interference with Economic Relationships)**

217.   Plaintiffs refer to the allegations contained in Paragraphs 1 through 212, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

218.   At the time of the events in question, economic relationships existed between Creation, on the one hand, and its borrower customers on the other hand, containing a probability of future economic benefits to Creation.

219.   At all relevant times, Defendants, and each of them, knew or should have known of these economic relationships.

220.   Defendants, and each of them, negligently interfered with the existing and prospective economic relationships by their misappropriation of trade secrets, unfair, unlawful, and/or fraudulent business and/or trade practices, and infringement. Defendants, and each of them, knew or should have known that interference was

certain or substantially certain to occur as a result of their actions.

221.   As a proximate result of Defendants' negligent interference with these economic relationships, said relationships never generated the economic benefits to Creation that it otherwise would have obtained therefrom. Thus, Creation has been damaged in an amount yet to be determined and to be proven at trial.

222.   The aforementioned acts of Defendants, and each of them, were willful and/or malicious, thereby entitling Creation to punitive damages.

### EIGHTEENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 171-180, inclusive.**

**(Constructive Trust)**

223.   Plaintiffs refer to the allegations contained in Paragraphs 1 through 218, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

224.   Plaintiffs are informed and believe, as a proximate result of the misappropriation, infringement, and interference, Defendants, and each of them, have been unjustly enriched.

225.   Plaintiffs are further informed and believe Defendants, and each of them, own and/or possess tangible real and/or personal properties and assets, including, but not limited to, bank, savings, investment and/or other financial accounts, consisting of, containing and/or directly or indirectly obtained by or as a result of profits derived, in whole or in part, from Defendants' acts of misappropriation, infringement, and interference as set forth herein.

226.   Plaintiffs are entitled to the profits each of the Defendants derived, directly or indirectly, in whole or in part, from his, her, or its misappropriation, infringement, and interference.

227.   Plaintiffs have no adequate remedy at law and have suffered irreparable harm and damage as a result of Defendants' conduct.

228.    Defendants' unjust enrichment occurred at Creation's expense, and, on the equitable grounds set forth herein, Plaintiffs therefore seek an accounting and disgorgement of all Defendants' unjustly earned profits, benefits, assets, payments, revenues, monies, and/or royalties.

229.    Moreover, Defendants hold the tangible real and/or personal properties and assets, referenced above as constructive trustees for the benefit of Plaintiffs in an amount yet determined and to be proven at trial.

## NINETEENTH CAUSE OF ACTION

**Against Michael Chiya Aryeh; Stone Street Capital, LLC; Clear Funding Group, LLC; Kian Mirin; and Does 181-190, inclusive.**

**(Money had and Received)**

230.    Plaintiffs refer to the allegations contained in Paragraphs 1 through 225, inclusive of this Complaint, and incorporate them as though set forth in full hereat.

231.    Defendants became indebted to Plaintiffs in a sum believed to be at least $1,000,000.00 of money had and received by Defendants for Plaintiffs' use and benefit.

232.    Defendants have failed to pay Plaintiffs the sum, owing $1,000,000.00.

233.    Therefore, Plaintiffs have suffered substantial damages in an amount to be proved at trial but believed to be in excess of $1,000,000.00.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

## ON THE FIRST CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For punitive damages in an amount determined at trial;

3.    For costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem proper.

## ON THE SECOND CAUSE OF ACTION

1. For special and general damages, in a sum not less than $1,000,000.00;
2. For punitive damages in an amount determined at trial;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court may deem proper.

## ON THE THIRD CAUSE OF ACTION

1. For special and general damages, in a sum not less than $1,000,000.00;
2. For punitive damages in an amount determined at trial;
3. For costs of suit incurred herein; and
4. For such other and further relief as the Court may deem proper.

## ON THE FOURTH CAUSE OF ACTION

1. For the value of the property converted;
2. For damages for the proximate and foreseeable loss resulting from Defendants' conversion;
3. For interest at the legal rate pursuant to Section 3287(a) of the Civil Code;
4. For interest at the legal rate pursuant to Section 3336 of the Civil Code;
5. For a fair compensation for the time and money properly expended in pursuit of the property pursuant to Section 3336 of the Civil Code.
6. For special and general damages, in a sum not less than $1,000,000.00;
7. For punitive damages in an amount determined at trial;
8. For costs of suit incurred herein; and
9. For such other and further relief as the Court may deem proper.

## ON THE FIFTH CAUSE OF ACTION

1. For special and general damages, in a sum not less than $1,000,000.00;
2. For treble damages pursuant to 18 U.S.C. 1964(c);
3. Disgorgement of any gains, profits, or advantages attributable to violations of 18 U.S.C. 1961-1968, et seq.;

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

4.    For reasonable attorney's fees;

5.    For costs of suit incurred herein;

6.    For imposition of a constructive trust; and

7.    For such other and further relief as the Court may deem proper.

## ON THE SIXTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For interest thereon at the legal rate;

3.    For costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem proper.

## ON THE SEVENTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For interest thereon at the legal rate;

3.    For costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem proper.

## ON THE EIGHT CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For punitive damages in an amount determined at trial;

3.    For costs of suit incurred herein;

4.    For restitution to Plaintiffs in the amount of the benefit unjustly retained by the Defendants, in a sum not less than $1,000,000.00;

5.    Disgorgement of any gains, profits, or advantages;

6.    For imposition of a constructive trust; and

7.    For such other and further relief as the Court may deem proper.

## ON THE NINTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For punitive damages in an amount determined at trial;

3.    For the amounts by which Defendants were unjustly enriched;

4.    For costs of suit incurred herein;

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

5.    For restitution to Plaintiffs in the amount of the benefit unjustly retained by the Defendants, in a sum not less than $1,000,000.00;

6.    Disgorgement of any gains, profits, or advantages;

7.    For imposition of a constructive trust; and

8.    For such other and further relief as the Court may deem proper.

## ON THE TENTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For punitive damages in an amount determined at trial;

3.    For costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem proper.

## ON THE ELEVENTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For actual damages resulting from Defendants' violations of the Computer Fraud and Abuse Act;

3.    For damages in the amount Defendants have been unjustly enriched as a result of their violations of the Computer Fraud and Abuse Act;

4.    For preliminary and permanent injunctions against Defendants using any of the information and data obtained in violation of the Computer Fraud and Abuse Act;

5.    For costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem proper.

## ON THE TWELFTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00 and for actual damages resulting from Defendants' violations of California Penal Code § 502;

2.    For damages in the amount Defendants have been unjustly enriched as a result of their violations of California Penal Code § 502;

3.    For preliminary and permanent injunctions against Defendants using

COMPLAINT

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

any of the information and data obtained in violation of California Penal Code § 502;

4. For punitive damages under California Penal Code § 502(e);

5. For an award of attorneys' fees under California Penal Code § 502(e);

6. For costs of suit incurred herein; and

7. For such other and further relief as the Court may deem proper.

### ON THE THIRTEENTH CAUSE OF ACTION

1. For special and general damages, in a sum not less than $1,000,000.00;

2. For treble damages;

3. For reasonable attorney's fees;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem proper.

### ON THE FOURTEENTH CAUSE OF ACTION

1. For restitution in a sum not less than $1,000,000.00;

2. For injunction to stop unfair or unlawful business practices;

3. For reasonable attorney's fees pursuant to Business & Professions Code §17082;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem proper.

### ON THE FIFTEENTH CAUSE OF ACTION

1. For special and general damages, in a sum not less than $1,000,000.00;

2. For punitive damages in an amount determined at trial;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court may deem proper.

### ON THE SIXTEENTH CAUSE OF ACTION

1. For special and general damages, in a sum not less than $1,000,000.00;

2. For costs according to proof; and

3. For such other and further relief as the Court deems just and proper.

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

KRAMAR MADNICK, LLP
ATTORNEYS AT LAW

1

## ON THE SEVENTEENTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For costs according to proof; and

3.    For such other and further relief as the Court deems just and proper.

## ON THE EIGHTEENTH CAUSE OF ACTION

1.    For imposition of a constructive trust;

2.    For costs according to proof; and

3.    For such other and further relief as the Court deems just and proper.

## ON THE NINETEENTH CAUSE OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00;

2.    For costs according to proof; and

3.    For such other and further relief as the Court deems just and proper.

## ON ALL CAUSES OF ACTION

1.    For special and general damages, in a sum not less than $1,000,000.00.

2.    For costs according to proof; and

3.    For such other and further relief as the Court deems just and proper.


DATED:  June 17, 2025                    KRAMAR MADNICK, LLP


By:_____
        H. MARK MADNICK
        Attorney for Plaintiffs

COMPLAINT